IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JANE K. DOE, | | |
| *Plaintiff,* | | |
| v. | | Civil No.: 1:25-cv-01703-JRR |
| BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY, | | |
| *Defendant.* | | |

**MEMORANDUM OPINION**

Pending before the court is Defendant Board of Education of Anne Arundel County's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 15; the "Motion"). The court has reviewed all papers; no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons that follow, by accompanying order, the Motion, construed as a motion to dismiss, will be denied.

**I.      BACKGROUND[1]**

Plaintiff Jane K. Doe, who was at all relevant times a minor, filed this action against Defendant Board of Education of Anne Arundel County d/b/a Anne Arundel County Public Schools ("AACPS") arising from alleged harassment by AACPS teacher Andrew Cizek. (ECF No. 1.)

**A.  Plaintiff's Experience at Annapolis High School with Andrew Cizek**

In Fall of 2021, Plaintiff enrolled in the International Baccalaureate ("IB)" program at Annapolis High School, an AACPS school, for her sophomore year. *Id.* ¶¶ 3, 13. Prior to the start

---

[1] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in Plaintiff's Complaint. (ECF No. 1.) *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

of her 2022-2023 academic year, Plaintiff contacted Cizek "to express interest in the IB Film 1 Class," a class he was assigned to teach. *Id.* ¶¶ 14–15. Cizek "responded and invited her for a social visit outside of school activities." *Id.* ¶ 15. Plaintiff subsequently enrolled in Cizek's IB Film 1 Class for the 2022-2023 academic year. *Id.* ¶ 16. During this academic year, Cizek "began to touch Plaintiff, including rubbing her shoulders and neck without consent." *Id.* ¶ 20. This occurred "on school grounds, during school hours, and in the presence of other students and faculty." *Id.*

In March of 2023, Plaintiff began working with Cizek on the school's musical production, requiring that they "work together after regular school hours, while on school property." (ECF No. 1 ¶ 17.) On another occasion that spring, Plaintiff alleges an incident in which Cizek prevented her from leaving his classroom by shutting the door and positioning himself between Plaintiff and the door, leaving her alone in the classroom with him. *Id.* ¶ 21.

During and following the 2022-2023 academic year, Cizek gave Plaintiff his personal cell phone number "to facilitate communication outside of school hours." (ECF No. 1 ¶ 18.) He continued to contact Plaintiff "by text and phone calls outside of school hours regarding personal matters." *Id.* ¶ 19. In communicating with Plaintiff, "Cizek would become aggressive and aggravated if Plaintiff did not respond to his text messages and phone calls, particularly if Plaintiff did not respond for several hours." *Id.* ¶ 25. Cizek sent Plaintiff messages asking, "where are you," "who is up there," "how is up there," "when is up there," and writing, "TELL ME NOW BELIEVE ME LATER" and "DO IT NOW." *Id.* ¶¶ 26–27 (emphasis in original). Cizek would also use the "notify anyway" feature, which sends a notification despite a phone being set to a "do not disturb" status. *Id.*

Cizek's behavior continued into Plaintiff's 2023-2024 academic year. At the start of the school year, Cizek "complained to Plaintiff that she had not sufficiently kept in touch with him during the summer months, making comments that she had 'ghosted' him." (ECF No. 1 ¶ 28.) When Cizek was unable to reach Plaintiff while she was at work (because her notifications were silenced per request of her employer), Cizek called the employer's business phone. *Id.* ¶ 29. Plaintiff asked Cizek to stop contacting her at work; he refused. *Id.* On one occasion, Cizek went to Plaintiff's workplace; she asked him to leave. *Id.* ¶ 29. Throughout the 2023-2024 academic year, Cizek "continued to touch Plaintiff, including rubbing her shoulders and neck without consent." *Id.* ¶ 30. This again "occurred on school grounds, during school hours, and in the presence of other students and faculty." *Id.* Cizek also "extended numerous invitations to Plaintiff to socialize outside of school." *Id.* ¶ 31.

**B. AACPS's Awareness of Cizek's Conduct**

Plaintiff alleges AACPS has been aware of Cizek's inappropriate conduct with female students since as early as 2012. Specifically, she alleges that "while Mr. Cizek was a teacher employed by Defendant AACPS, Mr. Cizek was investigated by Defendant AACPS for allegedly having an inappropriate relationship with a female student in 2012." (ECF No. 1 ¶ 12.) "The student claimed she was in a relationship with Mr. Cizek on Twitter." *Id.* Cizek was then reassigned to an administrative position for a period of time before he was reinstated in a teacher position. *Id.*

Plaintiff alleges that, at some unknown time, AACPS teacher Marlene Ramey "witnessed Mr. Cizek give his personal cell phone number to a female student, who was fourteen (14) years old at the time." (ECF No. 1 ¶ 32.) Upon reporting this incident to Annapolis High School counsel Kathleen Richburg, Richburg "discouraged Ms. Ramey from reporting the incident to anyone else

at the school, informing Ms. Ramey she would 'take care of it.'" *Id.* ¶¶ 33–34. Richburg did not report Cizek's behavior. *Id.* ¶ 36. Plaintiff contends this is contrary to AACPS policy that requires staff to report incidents of sexual harassment or misconduct to the Office of Investigations, the Equal Employment Opportunity Compliance Office, and the principal (or his/her designee). *Id.* ¶¶ 10–11.

On October 9, 2023, Plaintiff, accompanied by her friend, reported Cizek's conduct to Richburg. (ECF No. 1 ¶ 38.) Richburg stated that "Cizek was a friend and that his behavior was unintentional." *Id.* She also "informed Plaintiff that reporting Mr. Cizek could result in disciplinary action, further discouraging Plaintiff from reporting Mr. Cizek." *Id.* It was not until Plaintiff's friend contacted her (the friend's) mother, who in turn contacted Plaintiff's mother, that Plaintiff and her mother reported Cizek to Annapolis High School Assistant Principal, Mandy Joe. *Id.* ¶¶ 40–41. By October 11, 2023, Cizek had been suspended while Plaintiff's complaint was investigated. *Id.* ¶ 42. Plaintiff believes that Child Protective Services also opened an investigation into Cizek regarding his conduct toward her and another female student. *Id.* ¶ 43.

Defendant failed to keep Plaintiff's identify confidential and, "[f]ollowing Mr. Cizek's suspension and the ensuing investigation, students were able to surmise that Plaintiff had been the initial complainant against Mr. Cizek and was the reason for his suspension." (ECF No. 1 ¶¶ 44–45.) She was then "ostracized by other students." *Id.* ¶ 45. As a result of Cizek's abuse and AACPS's inadequate response, Plaintiff experienced (and still experiences), *inter alia*, depression, anxiety, panic attacks, emotional and psychological trauma, repeated absences from school, and poor academic performance. *Id.* ¶ 48.

**C. The Instant Action**

Plaintiff initiated this action on May 29, 2025, asserting four counts:

> Count I: Violation of Title IX of the Educational Amendments ("Title IX") of 20 U.S.C. § 1681, *et seq.;*
> Count II: Negligence;
> Count III: Negligent Hiring Supervision, and/or Retention; and
> Count IV: Vicarious Liability.

(ECF No. 1 ¶¶ 49–77.)  Defendant's Motion seeks dismissal of Plaintiff's claims or, alternatively, summary judgment.  (ECF No. 15.)

## II.    LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(d)

Defendant brings its Motion as a motion to dismiss or, alternatively, for summary judgment.  "A motion with this caption implicates the court's discretion under Fed. R. Civ. P. 12(d)."  *Hayes v. Maryland Transit Admin.*, 708 F. Supp. 3d 683, 688 (D. Md. 2023), *aff'd,* No. 24-1482, 2024 WL 4262786 (4th Cir. Sept. 23, 2024) (quoting *Snyder v. Md. Dep't of Transp.*, No. CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022)).  Federal Rule of Civil Procedure 12(d) provides: "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  FED. R. CIV. P. 12(d).

"A district judge has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it'"; such discretion "should be exercised with great caution and attention to the parties' procedural rights."  *Sammons v. McCarthy*, 606 F. Supp. 3d 165, 193 (D. Md. 2022) (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366 (3d ed. 2018)); *see Sol v. M&T Bank*, 713 F. Supp. 3d 89, 99–100 (D. Md. 2024) (same).  "In general, courts are guided by whether consideration of extraneous material 'is likely to facilitate the disposition of the action,' and

'whether discovery prior to the utilization of the summary judgment procedure' is necessary." *Sammons*, 606 F. Supp. 3d at 193 (quoting 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366).

"There are two requirements for a proper Rule 12(d) conversion." *Greater Balt. Ctr. for Pregnancy Concerns. Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 281 (4th Cir. 2013). "First, all parties must 'be given some indication by the court that it is treating the Rule 12(b)(6) motion as a motion for summary judgment,' which can be satisfied when a party is aware 'material outside the pleadings is before the court.'" *Snyder v. Maryland Dep't of Transportation*, No. CV CCB-21-930, 2022 WL 980395, at *4 (D. Md. Mar. 31, 2022) (quoting *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985)). Where a movant expressly captions a motion as one for summary judgment "in the alternative," the non-movant is "on notice that this motion might be treated as one for summary judgment"; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Second, customarily, the parties must first "be afforded a reasonable opportunity for discovery." *Gay*, 761 F.2d at 177.

"Generally, if a party believes that summary judgment is procedurally inappropriate because the party needs discovery to properly oppose the motion, the party should file a Rule 56(d) affidavit informing the court of such." *Sol*, 713 F. Supp. 3d at 100 (citing *Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 542–43 (D. Md. 2012)). However, even where a party fails to file an affidavit, "a district court abuses its discretion by granting summary judgment when it otherwise has 'fair notice of . . . potential dispute[s] as to the sufficiency of the summary judgment record.'" *Shaw v. Foreman*, 59 F.4th 121, 128 (4th Cir. 2023) (quoting *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021)). Indeed, "failing to file a Rule 56(d) affidavit is not necessarily

fatal where the 'nonmoving party has adequately informed the court that . . . more discovery is necessary.'" *Sol*, 713 F. Supp. 3d at 100 (quoting *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002)). That notwithstanding, a nonmovant may not "demand discovery for discovery's sake; a Rule 56(d) request is properly denied 'where the additional evidence sought . . . would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment.'" *Gardner v. United States*, 184 F. Supp. 3d 175, 181–82 (D. Md. 2016) (quoting *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995)).

While Plaintiff here fails to supply an affidavit pursuant to Rule 56(d), she nonetheless expressly argues that summary judgment is premature where discovery has not yet commenced and discovery is needed as to, at a minimum, the full context of materials offered by Defendant as to the instant motion, the investigative reports for Cizek's prior incidents of misconduct, additional information about allegations of Cizek's inappropriate relationships with other female students, and Defendant's actual notice of Cizek's conduct. (ECF No. 22-1 at pp. 3, 9 n.1, 10–11, 17 n.4.) Plaintiff also urges that this case presents a circumstance where Defendant has custody and control of much of the evidence, and that, without discovery, she lacks the ability to fully investigate her claims. (ECF No. 22-1 at p. 24.) The court agrees that the identified discovery would tend to bear on material facts that may well, at a minimum, generate a triable issue as to Defendant's knowledge and resulting actions. The court therefore declines to convert Defendant's Motion and will resolve it per the standard applicable to a Rule 12(b)(6) challenge.

### B. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to

dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a court usually does not consider evidence outside of the complaint. A court may consider documents attached to a motion to dismiss if the documents are "integral to and explicitly relied on in the complaint and [if] the plaintiffs do not challenge its authenticity." *Am. Chiropractic Ass'n, Inc. v. Trigon Healthcare Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.,* 190 F.3d 609, 618 (4th Cir. 1999)). "To be 'integral,' a document must be one 'that by its very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Wooten v. Univ. of Maryland, Baltimore*, 733 F. Supp. 3d 402, 415 (D. Md. 2024) (emphasis in original) (quoting *Chesapeake*

8

*Bay Found. Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d. 602, 611 (D. Md. 2011)). Defendant has not argued that the evidence it offers is integral to, or explicitly relied upon by Plaintiff in, the Complaint. Indeed, Defendant advances no argument that such evidence may be considered in ruling on his Rule 12(b)(6) arguments. Accordingly, because the court declines to convert the pending motion, it will not consider the referenced/attached exhibits.

III.    **ANALYSIS**

In the Motion, Defendant moves to dismiss (or for summary judgment on, as discussed above) all of Plaintiff's claims.

A.  **Count I: Violation of Title IX**

Defendant first seeks dismissal of Plaintiff's claim asserted under Title IX. "Congress enacted Title IX in 1972 with two principal objectives in mind: '[T]o avoid the use of federal resources to support discriminatory practices" and "to provide individual citizens effective protection against those practices.'" *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 286 (1998) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 704 (1979)). In relevant part, Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "[A] victim of sex discrimination is entitled to pursue a private cause of action against a federally-funded educational institution for a violation of Title IX." *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 686 (4th Cir. 2018) (quoting *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999)).

The elements of a Title IX claim based on teacher-on-student sexual harassment include "(1) [plaintiff] was a student at an educational institution receiving federal funds, (2) she was

subjected to harassment based on her sex, (3) the harassment was sufficiently severe or pervasive to create a hostile (or abusive) environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 695 (4th Cir. 2007) (citing *Frazier v. Fairhaven Sch. Comm.,* 276 F.3d 52, 66 (1st Cir. 2002)).

"Title IX liability requires not only actual notice but also proof of deliberate indifference, which is a high bar." *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 268 (4th Cir. 2021). Accordingly, for liability to attach to the educational institution, "an official who . . . has authority to address the alleged discrimination and to institute corrective measures" must have "actual knowledge of discrimination in the [institution's] programs and fail[] adequately to respond' or display[] 'deliberate indifference' to discrimination." *Jennings*, 482 F.3d at 700 (quoting *Gebser*, 524 U.S. at 290); *see Blair v. Appomattox Cnty. Sch. Bd.*, 147 F.4th 484, 491–92 (4th Cir. 2025) (quoting *Davis*, 526 U.S. at 630, and explaining that, "[w]ith respect to the fourth prong, liability of a school arises only in cases of deliberate indifference, or 'where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances'").

The official discussed above is often referred to as an "appropriate person" or an "appropriate official." *Gebser*, 524 U.S. at 290; *Doe v. N. Carolina State Univ.*, 125 F.4th 498, 503 (4th Cir. 2025). An appropriate person is "at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290; *see N. Carolina State Univ.*, 125 F.4th at 503 (same). Fourth Circuit caselaw suggests that such a person possesses "the power to hire, fire, transfer, or suspend teachers." *Baynard v. Malone*, 268 F.3d 228, 239 (4th Cir. 2001). Still, "[w]hether an individual, regardless of job title, could take appropriate corrective measures . . . depends on the facts of the case." *Willey v. Bd. of Educ. of St. Mary's Cnty.*, No. CV DLB-20-161, 2023 WL 3821741, at *5 (D. Md. June 5, 2023) (first citing

10

*Gebser*, 524 U.S. at 290; then citing *Baynard*, 268 F.3d at 238–39).  It is not enough to show that an employee has "the ability to report harassment to school administrators who could discipline students."  *Id.*

Defendant here moves to dismiss Plaintiff's Title IX claim, urging that she fails to plausibly allege that it either had actual notice of Cizek's harassment or acted with deliberate indifference with regard to same.

### 1.  Actual Notice

"[A] school has actual notice or knowledge when it is informed or notified of the alleged harassment—most likely via a report."  *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 266 (4th Cir. 2021).  Thus, when an appropriate person "receives a report that can objectively be construed as alleging sexual harassment, that receipt establishes actual notice of such harassment for Title IX purposes."  *Fairfax Cnty*, 1 F.4th at 265; *see N. Carolina State Univ.*, 125 F.4th at 503 (same). The report must allege that a student "'was currently' being sexually harassed."  *N. Carolina State Univ.*, 125 F.4th at 505 (quoting *Baynard*, 268 F.3d at 238 n.9).  In this context, "'[c]urrently' means when an allegation of sexual harassment is made—not necessarily . . . at the time of the plaintiff's harassment."  *Id.*  With regard to the content of the report, "[t]he ultimate inquiry is 'whether a reasonable official would construe [the report] as alleging misconduct prohibited by Title IX.'"  *N. Carolina State Univ.*, 125 F.4th at 505 (quoting *Fairfax Cnty*, 1 F.4th at 268).

While "[r]eports that support only 'a general, *substantial risk* of—or the *potential* for— ongoing or future misconduct' cannot provide actual notice of 'current [sexual harassment],'" past reports of sexual harassment (made contemporaneously with the offending event) may still constitute the requisite notice.  *See N. Carolina State Univ.*, 125 F.4th at 505–507 (citation omitted) (noting "[t]he university argues that Findley's report couldn't provide the requisite notice because

11

he reported Murphy's sexual grooming years before Murphy sexually abused Doe.  That's wrong").

As to actual notice, Defendant urges that Plaintiff's allegations are insufficient because (1) Richburg and Ramey are not appropriate persons with authority to take corrective action to end the discrimination, *see Gebser*, 524 U.S. at 290, and (2) Defendant's prior investigation of Cizek for an inappropriate relationship with a female student cannot provide a basis for actual notice of the harassment of Plaintiff.  (ECF No. 15-1 at pp. 17–20.)

To the extent Plaintiff contends Defendant had actual notice of Cizek's harassing behavior based on upon Ramey's observation and the subsequent report to Richburg at some unidentified time, the court agrees that she has failed to allege facts to support that Ramey or Richburg had "authority to take corrective action to end the discrimination," *see Gebser*, 524 U.S. at 290, such as "the power to hire, fire, transfer, or suspend teachers," *see Baynard*, 268 F.3d at 239, or any other corrective action.  Plaintiff does not other facts to support a plausible inference that the report to Richburg (or Ramey's observation) constituted actual notice to Defendant of Cizek's conduct.[2] *See Willey*, 2023 WL 3821741, at *5 (noting determination depends on the facts of the case).  In the absence of such allegations, Plaintiff has failed to allege plausible actual notice based on Ramey and Richburg's awareness of Cizek's conduct.[3]

The court thus turns to whether Plaintiff's allegation that Defendant's former investigation of Cizek constitutes actual notice to Defendant of Cizek's harassing behavior.  (ECF No. 1 ¶ 12;

---

[2] Because the court concludes as such, it does not address Defendant's argument that a report that Cizek gave a female student his personal cell phone number is, in any event, insufficient to put Defendant on notice.

[3] The court does not foreclose that a teacher and counselor may each be an appropriate person under the Title IX. Indeed, "[t]he Fourth Circuit has not addressed whether a high school teacher . . . may be an 'appropriate person' under Title IX," *see Willey v. Bd. of Educ. of St. Mary's Cnty.*, No. CV DLB-20-161, 2023 WL 3821741, at *4 (D. Md. June 5, 2023), and a report to a classroom teacher "may be considered adequate notice" in the context of peer-on-peer sexual harassment, *see Willey v. Bd. of Educ. of St. Mary's Cnty.*, 557 F. Supp. 3d 645, 661 (D. Md. 2021). This issue here is that Plaintiff fails to allege facts to raise a plausible inference of same.

ECF No. 22-1 at p. 6.)  On this point, the Fourth Circuit's recent decision in *Doe v. North Carolina State University* is instructive.  125 F.4th 498 (4th Cir. 2025).  The Fourth Circuit explains that "[a]ctual notice requires 'that the school be aware of an allegation that an employee is *currently* sexually harassing a student,'" with "currently" meaning "when an allegation of sexual harassment is made—not necessarily, as the university suggests, at the time of the plaintiff's harassment."  *Id.* at 507 (citation modified) (emphasis in original) (quoting *Doe v. Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 265 (4th Cir. 2021)).  Upon the facts there, the Fourth Circuit considered, *inter alia*, the university defendant's argument that a report in 2016 that a university sports official was grooming male student athletes "couldn't provide actual notice of sexual harassment '*currently*' occurring," and that "knowledge in 2016 of suspicions of 'grooming' does not establish that [the university] had actual notice that Murphy was harassing students in 2021."  *Id.* at 504 (citation omitted).  The Fourth Circuit rejected this argument.  *Id.* at 506–507.

On this same reasoning, the court is persuaded that Plaintiff plausibly alleges actual notice based on Defendant's prior notice (and subsequent action) as to Cizek's inappropriate relationship with a female student, notwithstanding that it preceded Cizek's alleged harassment of Plaintiff and the reports of such harassment.  *See also Chenier v. Bd. of Supervisors for Louisiana Sys.*, No. CV 16-4125, 2017 WL 3425442, at *7 (E.D. La. Aug. 8, 2017) (noting that "several other courts of appeal and district courts have determined that knowledge of a history of similar sexual misconduct with students may satisfy the actual notice prong" and citing cases)

### 2.  *Deliberate Indifference*

The court next turns to Defendant's argument that Plaintiff fails to allege deliberate indifference.  "Under Title IX, a school acts with deliberate indifference where its 'response to the [alleged] harassment or [the] lack [of any such response] is clearly unreasonable in light of the

known circumstances.'" *Fairfax Cnty. Sch. Bd.*, 1 F.4th 257, 271 (4th Cir. 2021) (quoting *Davis*,

526 U.S. at 648.).  "[A]n educational institution could be liable under Title IX not only where its

deliberate indifference 'cause[s] [students] to undergo harassment,' but also where such

indifference 'make[s] them liable or vulnerable' to harassment."  *Id.* at 273 (quoting *Davis*, 526

U.S. at 645).  As this court has previously explained:

> An educational institution "may be held liable under Title IX if its
> response to even a single "incident of severe sexual harassment, or
> the lack thereof, was clearly unreasonable and thereby made the
> plaintiff more vulnerable to future harassment or further contributed
> to the deprivation of the plaintiff's access to educational
> opportunities." *Fairfax*, 1 F.4th at 274. And, "an educational
> institution may be held liable for discrimination under Title IX when
> its indifference makes its students 'liable or vulnerable to
> harassment,' even if no harassment occurs after the report of sexual
> harassment." *Danvers as next friends of Danvers v. Loudoun County
> School Board*, RDA-21-1028, 2022 WL 4585524 (E.D. Va Sep. 29,
> 2022) (internal citation omitted).

*Robinson v. Bd. of Educ. of Washington Cnty.*, No. 1:22-CV-01102-ELH, 2023 WL 2499854, at

*9 (D. Md. Mar. 14, 2023) (footnote omitted).

"While deliberate indifference is a high standard that requires more than a showing of mere

negligence, . . . 'half-hearted investigation or remedial action will [not] suffice to shield a school

from liability.'" *Fairfax Cnty. Sch. Bd.*, 1 F.4th at 271 (first citing *Baynard*, 268 F.3d at 236; then

quoting *S.B. ex rel. A.L. v. Bd. of Educ. of Harford Cnty.*, 819 F.3d 69, 77 (4th Cir. 2016)).

However, "[i]f a school becomes aware of an unsubstantiated allegation of sexual harassment, duly

investigates it, and reasonably dismisses it for lack of evidence, the school would not be liable

since it did not act with deliberate indifference." *Id.* at 268.  Relevant here, the Fourth Circuit has

recently explained that a plaintiff may show that an education institution "was deliberately

indifferent to a prior report of then-occurring sexual harassment by [her] harasser." *N. Carolina

State Univ.*, 125 F.4th at 507 (noting that the university's interpretation that "it would not be

enough for a plaintiff to show that his university was deliberately indifferent to a prior report of then-occurring sexual harassment by his harasser," but that "he would have to show that his university *also* had actual notice of sexual harassment by his harasser at the time of the plaintiff's harassment, even though the university's deliberate indifference to the prior report led to his harassment" is "not the law").

Defendant contends that Plaintiff's allegations of deliberate indifference are insufficient, which is to say that its response to known harassment was clearly unreasonable. (ECF No. 15-1 at pp. 21–23.) Plaintiff's allegations of deliberate indifference rest upon the allegations that Defendant "failed to take appropriate and/or necessary action to prevent [her] harassment," and "failed to enact, disseminate, and/or implement proper and/or adequate policies to discover, prohibit, or remedy the harassment Plaintiff suffered." (ECF No. 1 ¶¶ 54–55.) She bases these allegations on the assertion that Defendant permitted a culture where Cizek's behavior was tolerated, permitted, and/or normalized, where officials failed to respond to complaints regarding Cizek's inappropriate and harassing behavior, and where Defendant failed to protect Plaintiff from Cizek's known inappropriate behavior. *Id.* ¶ 52.

The court is persuaded that Plaintiff pleads a plausible claim that Defendant was deliberately indifferent to alleged harassment by Cizek. Plaintiff alleges Defendant had actual notice of Defendant's inappropriate conduct with female students and failed to take action to protect Plaintiff from harassment by Cizek. *See N. Carolina State Univ.*, 125 F.4th at 507. She further alleges that Defendant's inadequate response left her vulnerable to harassment and the resultant alleged deprivation of access to educational opportunities, *see Robinson*, 2023 WL 2499854, at *9. These alleged failings are further amplified by the openness of the alleged conduct—Cizek allegedly acted in the open, during school hours, and in view of other students

and faculty—and the nature of the conduct. *Cf. N. Carolina State Univ.*, 125 F.4th at 506 (explaining "[m]isconduct committed by an employee, particularly one who exercises authority over a student, is more likely to violate Title IX than misconduct committed by a peer") (citing *Davis*, 526 U.S. at 653). Plaintiff thus plausibly alleges Defendant's deliberate indifference.

The court will therefore deny the Motion to the extent it seeks dismissal of Plaintiff's Title IX claim.

### B. Counts II and III: Plaintiff's Negligence Claims

Defendant next challenges Plaintiff's negligence claims for failure to allege a plausible breach of duty (as to negligence) and Defendant's actual or constructive knowledge (as to negligent hiring, supervising, and retention). Defendant's arguments as to each are based on its contention that Plaintiff fails to allege that it knew or should have known of Cizek's conduct. (ECF No. 15-1 at pp. 24–29.)

"A plaintiff bringing a negligence claim must establish four elements: 'a duty owed to [her] (or to a class of which [she] is a part), a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.'" *Kiriakos v. Phillips*, 448 Md. 440, 456 (2016) (quoting *Jacques v. First Nat'l Bank of Md.,* 307 Md. 527, 531 (1986)). Relatedly, "[a]n employer is obligated 'to the public to use due care in selecting and retaining only competent and careful employees.'" *State v. Jones*, 197 Md. App. 638, 669–70 (2011), *rev'd on other grounds,* 425 Md. 1 (2012) (citing *Henley v. Prince George's Cnty.,* 60 Md. App. 24, 36 (1984)).

> To state a claim for negligent hiring, training, or supervision, Plaintiff must show: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring, [training, or supervising the employee] . . . as the approximate cause of plaintiff's injuries."

16

*Karn v. PTS of Am., LLC*, 590 F. Supp. 3d 780, 805 (D. Md. 2022). "There is a rebuttable presumption that an employer uses due care in hiring an employee." *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 419 (D. Md. 2022) (citations omitted). *See Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 382 Md. 170, 181 (2004) (same). Relevant here, "with respect to an employee's intentional torts, 'the critical standard is whether the employer knew or should have known that the individual was potentially dangerous." *Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d at 419 (quoting *Jordan v. W. Distrib. Co.*, 135 F. App'x 582, 589 (4th Cir. 2005)).

Plaintiff alleges that Defendant, through its agents, including Richburg, breached its duty owed to her as a student and to use reasonable care in hiring by:

> Failing to properly supervise Mr. Cizek while performing his duties as an employee of Defendant AACPS;
>
> Failing to institute and/or enforce policies regarding physical contact between teachers and students;
>
> Failing to institute and/or enforce policies regarding fraternization between teachers and students outside of academic and/or extracurricular activities;
>
> Failing to institute and/or enforce policies to prevent a culture where inappropriate behavior by teachers, such as Mr. Cizek, was tolerated, permitted and/or normalized;
>
> Failing to ensure that students reporting inappropriate behavior were able to do so in a practical, safe, private and age-appropriate way;
>
> Failing to protect Plaintiff from predatory and/or grooming behavior by Mr. Cizek;
>
> Failing to protect Plaintiff's identity following her report of Mr. Cizek's behavior;
>
> Failing to take reasonable steps to ensure that its agents, servants and/or employees, including but not limited to, Mr. Cizek and Ms. Richburg, complied with school policies, specifically including, but not limited to, AACPS Policy "JCH-RA – Student Complaints Related to Policy, Regulation or Law", AACPS Policy JP – Sexual

17

> Harassment and Misconduct, and/or AACPS Regulation "JO-RA –
> Bias Behavior and Language";
>
> .            .            .
>
> Failing to perform appropriate background checks which would
> have revealed Mr. Cizek's propensity to pursue inappropriate
> relationships with female students[.]

(ECF No. 1 ¶¶ 63, 66.)

She further alleges that Defendant knew or should have known Cizek posed a risk to students based on its disciplinary action against him for an inappropriate relationship with a female student, observation of his inappropriate conduct by another teacher, the report of same to an Annapolis High School counselor, and that such conduct happened during school hours and in the presence of other students and faculty. *Id.* ¶¶ 12, 20, 30 32–34, 36. Plaintiff alleges that Richburg specifically repeatedly ignored Cizek's inappropriate behavior, discouraged Ramey and Plaintiff from reporting same, and did not taken any action to report such behavior. *Id.* ¶¶ 34–36.

Such allegations, accepted as true, support a plausible inference that Defendant knew or should have known of Cizek's inappropriate conduct and, separately, that its failure to protect Plaintiff (or properly address known conduct) breached its duty owed to Plaintiff.[4] The court will therefore deny the Motion to the extent it seeks dismissal of Plaintiff's negligence claims under Counts II and III.

### C.  Count IV: Vicarious Liability

Finally, Defendant argues that Plaintiff's claim for vicarious liability fails because Cizek's inappropriate conduct was not sufficiently associated with his duties as a teacher to fall within the scope of his employment. (ECF No. 15-1 at pp. 29–30.) "*Respondeat superior* is 'a means of

---

[4] Defendant contends that Plaintiff "has alleged zero facts to support any claim regarding any specific training impropriety or deficiency of Mr. Cizek," and thus her "claim for negligent training fails as a matter of law." (ECF No. 15-1 at p. 25.) Plaintiff does not allege negligent training.

holding employers . . . vicariously liable for the tortious conduct of an employee acting within the scope of his/her employment.'" *Davis v. Frostburg Facility Operations, LLC*, 457 Md. 275, 296–97 (2018) (quoting *Serio v. Baltimore Cty.*, 384 Md. 373, 397–98 (2004)).  To state a claim sounding in vicarious liability, a plaintiff need only plausibly allege that the employee committed a tort "and did so while acting within the scope of his employment."  *See Women First OB/GYN Assocs., L.L.C. v. Harris*, 232 Md. App. 647, 658 (2017); *see also Doe #1 v. Bd. of Educ. of Somerset Cnty.*, No. CV RDB-22-1491, 2023 WL 375189, at *4 (D. Md. Jan. 24, 2023) (discussing same).  "To be considered within the scope of employment, the employee's acts 'must have been in furtherance of the employer's business and authorized by the employer.'" *Davis*, 457 Md. at 296–97 (quoting *Mgmt. Corp. v. Taha*, 378 Md. 461, 481 (2003)).

Plaintiff's claim of vicarious liability is based on the acts and omissions of Cizek, seemingly for sexual harassment and stalking, *see* ECF No. 1 ¶ 60, and Richburg, seemingly for negligence, *see* ECF No. 1 ¶¶ 59–60.  Defendant does not challenge that Plaintiff's allegations of tortious conduct by Richburg and Cizek.[5]  Instead, its sole challenge appears to be that Plaintiff does not plausibly allege that Cizek acted within the scope of his employment when he committed such tortious conduct.  While Defendant's argument does not address Richburg, the court nonetheless considers her as well.

With regard to Richburg, Plaintiff alleges that Ramey's and Plaintiff's reports were brought to her in her role as an AACPS counselor, during the school day and school hours, by a coworker and student.  Plaintiff has plausibly alleged any negligence by Richburg arose when she was acting within the scope of her employment.  With regard to Cizek, an employer "may . . . be liable for the wrongful conduct of the employee, even if the employee was 'willful' or 'reckless,' as long as

---

[5] The court has already addressed Defendant's challenge as to Plaintiff's separately-pled negligence claims.

the employee's conduct was in the furtherance of the employer's business and within the scope of employment." *Loveless v. Estevez*, No. 01985, sept. term, 2017, 2019 WL 4187465, at *14 (Md. Ct. Spec. App. Sept. 3, 2019) (quoting *Tall v. Bd. of Sch. Comm'rs of Baltimore City*, 120 Md. App. 236, 252 (1998)). "Consequently, 'an act may be within the scope of employment, even though forbidden or done in a forbidden manner, or consciously criminal or tortious[.]'" *Id.* (quoting *Tall*, 120 Md. App. at 252). The court finds the decision of this court in *Doe #1 v. Board of Education of Somerset County* persuasive, wherein the Honorable Richard D. Bennett explained:

> Ordinarily, a school official's sexual misconduct is considered outside the scope of employment and thus cannot be a basis for vicarious liability. *Matta v. Bd. of Educ. of Prince George's Cnty.*, 552 A.2d 1340, 1345 (Md. 1989). Where an employer with "knowledge of all the material facts" ratifies an employee's misconduct, however, the employer may be held responsible. *Tower Oaks Blvd., LLC v. Procida*, 100 A.3d 1255, 1273 (Md. 2014). The plaintiffs here allege that the Board had actual knowledge of Marsh's grooming conduct based on its agents' firsthand observations and as a product of reports filed by both parents and school personnel. They claim further that the Board received a report that Marsh engaged in a sexual relationship with another student. Yet the Board did nothing. And Marsh then proceeded to engage in sexual misconduct with the student-plaintiffs. The Board's purported acquiescence to Marsh's misconduct is sufficient to sustain a claim that it ratified her behavior and is thus subject to vicarious liability despite the normal rule that the sexual misconduct of school personnel falls outside the scope of employment.

No. CV RDB-22-1491, 2023 WL 375189, at *5 (D. Md. Jan. 24, 2023).

Accordingly, where Plaintiff alleges here that Defendant was on notice of Cizek's history of inappropriate relationships with female students, that at least two of Defendant's employees were aware of his inappropriate conduct and no action was taken, and that the harassing conduct

20

occurred in the open, on school grounds, and during school hours, Plaintiff plausibly alleges

Defendant ratified Cizek's behavior and is thus subject to potential vicarious liability.[6]

Accordingly, the court will deny the Motion as to Plaintiff's assertion of vicarious liability

(Count IV).

## IV.    **CONCLUSION**

For the reasons set forth herein, by separate order, the Motion, construed as a motion to

dismiss, shall be denied.

March 6, 2026                                            /s/
                                                        Julie R. Rubin
                                                        United States District Judge

---

[6] While the court notes that the caselaw in this district does not conclusively establish that vicarious liability (which presents a theory of liability) may stand alone as a separate cause of action under Maryland law, *see Seiberlich v. Deossa*, No. CV TDC-23-0560, 2024 WL 343298, at *5 (D. Md. Jan. 30, 2024) ("Judges in this District have held that *respondeat superior* is not a separate cause of action under Maryland law.'" (citing cases)); *Collington v. Maryland*, No. GJH-20-966, 2021 WL 3172275, at *17 (D. Md. July 26, 2021) ("[T]o the extent that Plaintiff is attempting to bring a separate 'vicarious liability' cause of action, such a cause of action does not exist." (citation omitted)), the court declines to dismiss the claim on this basis where Defendant has not argued as such.

21